

# NUMBER 13-06-00666-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ERASMO GARZA,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

**On appeal from the 28th District Court of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela**
**Memorandum Opinion by Chief Justice Valdez**

Appellant, Erasmo Garza, brings this appeal following his conviction for sexual assault of a child, aggravated sexual assault of a child, and indecency with a child. We modify the trial court's judgment and affirm it as modified.

## I. BACKGROUND

Appellant sexually abused his own daughter, C.G., from the time that she was seven

years old until she was fourteen, when she unexpectedly gave birth to his child.  At trial, C.G. testified to numerous instances of sexual abuse, including touching and masturbation, sexual intercourse, and various incidents of anal intercourse.

Appellant was indicted on four counts of aggravated sexual assault of a child, one count of indecency with a child, and one count of sexual assault of a child.  A jury found appellant guilty on each count, assessed life sentences for each of the first four counts of aggravated sexual assault of a child, and twenty-year sentences for the indecency and sexual assault counts.[1]  The trial court ordered that the sentences all run consecutively.  This appeal ensued.

## II.  Ex Post Facto

By his first point of error, appellant contends the trial court violated the ex post facto provisions of the state and federal constitutions.[2]  Specifically, he argues the trial court erred by ordering the sentences for counts three, four, and five, to run consecutively to each other.

Section 3.03 of the penal code provides that if an accused is found guilty of more

---

[1]  The counts, offenses, and dates of the offenses appellant was convicted of are as follows:

> Count one:  Aggravated Sexual Assault of a Child, June 4, 1999;
> Count two:  Aggravated Sexual Assault of a Child, August 4, 1998;
> Count three:  Aggravated Sexual Assault of a Child, August 4, 1996;
> Count four:  Aggravated Sexual Assault of a Child, August 4, 1997;
> Count five:  Indecency with a child, August 4, 1997; and
> Count six:  Sexual assault of a Child, December 1, 1999.

[2]  An unconstitutional ex post facto law (1) punishes as a crime an act previously committed which was innocent when done, (2) changes the punishment and inflicts a greater punishment than the law attached to a criminal offense when committed, or (3) deprives a person charged with a crime of any defense available at the time the act was committed.  *Johnson v. State*, 930 S.W.2d 589, 591 (Tex. Crim. App. 1996) (citing *Collins v. Youngblood*, 497 U.S. 37, 42-43 (1990)).  The issue in this case focuses on the second definition; i.e., punishment.

than one offense arising out of the same criminal episode, the sentences may run consecutively if each sentence is for a conviction of indecency with a child, aggravated sexual assault, and other enumerated offenses. TEX. PENAL CODE ANN. § 3.03(b)(1) (Vernon Supp. 2007). However, this particular section became effective September 1, 1997, and only applies to offenses which were committed after this date. *See Ponce v. State*, 89 S.W.3d 110, 119 (Tex. App.–Corpus Chrisit 2002, no pet.). Prior to the effective date of the amendment, section 3.03 provided that if an accused is found guilty of more than one offense arising out of the same criminal episode, the sentences for each offense shall run concurrently. *Id*.

Here, appellant was found guilty of two counts of aggravated assault and one count of indecency with a child, all committed prior to September 1, 1997. Thus, because these three offenses occurred prior to the amendment of section 3.03 of the penal code, the sentences should not have been ordered to run consecutively. Because the cumulation of sentences essentially constitutes an increase in punishment, we conclude that "to allow cumulation of punishment under authority of a statute that did not so provide at the time of the offense violates the Ex Post Facto Clause." *Id*. (quoting *Johnson v. State*, 930 S.W.2d 589, 593 (Tex. Crim. App. 1996)). Appellant's first issue is sustained.

### III. STATE'S HYPOTHETICAL QUESTION

By his second issue, appellant complains of a hypothetical question posed by the State to his defense expert.

At the punishment stage of trial, appellant called psychologist Dr. William Flynn who testified that he had conducted a complete psychiatric examination of appellant, and formed the opinion that appellant "has the lowest risk of re-offending sexually, and has the lowest risk of re-offending in other violent matters [sic]." The record shows that Dr. Flynn made extensive use of standardized tests in making this determination. At the hearing, Dr. Flynn described his examination of appellant as consisting of several parts, one of which included a determination of whether appellant had any previous convictions for "non-contact" sexual offenses. According to Dr. Flynn, the fact that appellant did not have any other "deviant interest," such as, "looking through other people's windows" or "exposing himself [to others]," placed appellant in a low-risk category for re-offending.

On cross-examination, the State asked Dr. Flynn whether he knew how appellant was apprehended. Dr. Flynn answered that he was unaware of the circumstances surrounding appellant's apprehension. The State then asked to approach the bench. The following bench conference then occurred:

> Q [State]: He was looking into windows when he was caught, finally, a year later. And I would like to go into that. I just learned that myself. And he mentioned looking into windows quite a bit during his testimony.
>
> [Defense counsel]: There is no evidence he's ever looked into windows. We haven't heard any evidence on the record of that. If somebody is telling him that in the peanut gallery, its not relevant.
>
> [State]: That would have made the risk factor higher. He even blurted out about looking in windows. So I would like to be able to ask him, in good faith as I understand it, he was looking in windows and that is how he finally got caught.

4

[The Court]: That is not in evidence.

[Defense Counsel]: It's not in evidence.

[State]: It is not in evidence but I can ask him about it and then I can bring officers–

[The Court]: You can ask about a hypothetical

[State]: Okay.

[The Court]: But I think he already testified to that.

[Defense counsel]: He already testified to that.  Why do we need to go over that –

[State]: Well, then –

[Defense counsel]: I'm going to object to the hypothetical.

The bench conference concluded, and the State continued with its cross-examination:

[State]: Hypothetically, Doctor, if someone were on the run for a year and were caught looking into windows, and that's how they were finally caught for an outstanding warrant, would that change the risk factor for you?

[Defense counsel]: I'm going to object to the question.  There is no evidence that anybody was looking in windows.  It is irrelevant and it is not in evidence.

[State]: Your Honor, the Court allowed me to ask a hypothetical question on it.  I would be happy to blurt out why I feel that it is relevant, but I think we need to approach.

[Defense counsel]: Your Honor, we can go on hypotheticals forever, especially with a psychologist.  We can ask him a myriad of hypotheticals.  It is irrelevant.  It is not even any part of this case.

[The Court]: She is allowed to question on hypotheticals.  Overruled.

* * * * *

Q [State]: Do you think that is something [sic] pretty dangerous when someone peeks into windows.

5

A: I think it is pretty dangerous and increases the risk of re-offending when someone is convicted of peeping in windows.

Q: Okay. So if someone is caught peeking in windows but not convicted of it yet, that is –

A: Counselor, I don't know how to answer your question. Caught means –

[Defense counsel]: Your Honor, I'm going to object right now. She is trying to insert in the jury's mind that my client had been going around peeking through windows. None of this is in evidence and it is irrelevant. It is improper, too.

[State]: Your Honor, I'm asking in good faith.

[The Court]: I think he has answered the question. Can we please move on.

[State]: Pass the witness.

The above testimony shows that appellant objected on the basis of relevance and assuming facts not in evidence. To the extent he argues on appeal that the probative value of the question was substantially outweighed by the danger of unfair prejudice, appellant's trial objection did not preserve error for review as to rule 403 of the Texas Rules of Evidence. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990).

After reviewing the record, we find that appellant correctly pointed out that the State did in fact ask Dr. Flynn to assume a fact which was not in evidence because there was no testimony that appellant had previously been caught looking through windows. Nevertheless, when a hypothetical question is addressed to an expert witness, the assumptions on which the hypothetical is based are not necessarily limited to those assumptions which are supported by the evidence. *Pyles v. State*, 755 S.W.2d 98, 118 (Tex. Crim. App. 1988). Hypothetical questions may also include assumptions based on facts that are within the personal knowledge of the witness or that are assumed from common or judicial knowledge. *Id.*

6

Here, to determine appellant's future dangerousness, Dr. Flynn administered a Static 99 exam, which he deemed as "both reliable and valid." According to Dr. Flynn, the exam has a 75% prediction rate, and added "if I say somebody is going to be low risk, I'm going to be right a lot." The exam itself uses ten factors to correlate with sexual offense recidivism; among the factors to consider is whether a person has previous convictions for "non-contact sex offenses." Dr. Flynn repeatedly emphasized that because appellant does not have any previous sexual offense convictions, he "has the lowest risk of re-offending sexually."

Once Dr. Flynn testified to these conclusions, the State was entitled to inquire into the circumstances of his research and investigation, the manner in which he conducted his inquiry, and the materials upon which he relied. *See Wheeler v. State*, 67 S.W.3d 879, 883 (Tex. Crim. App. 2002). Here, the State's hypothetical went directly to the validity of conclusions based on the Static 99 test, and was factually premised on Dr. Flynn's own expert testimony, i.e., that a person who has exhibited deviant sexual behavior, such as looking through windows, is more inclined to re-offend. In other words, Dr. Flynn was merely asked to factually assume what he already knew, and his answer to the State's hypothetical was merely a repeat of what he had previously attested to. We find no error. *See Barefoot v. State*, 596 S.W.2d 875, 887-88 (Tex. Crim. App. 1980) (an opponent may, on cross-examination, secure the expert's opinion upon a different set of facts, including facts assumed by the opponent in accordance with his own theory of the case); *Ex parte Woods*, 745 S.W.2d 21, 26 n.4 (Tex. Crim. App. 1988) (citing the Supreme Court's ruling in *Barefoot v. Estelle*, 463 U.S. 880 (1983), for the proposition that expert testimony, when based on a hypothetical, "is commonly admitted as evidence where it might help the fact-

finder to do its assigned job"); *Held v. State*, 948 S.W.2d 45, 53 (Tex. App–Houston [14th Dist.] 1997, pet. ref'd) (finding hypothetical question proper where assumed facts derived from expert's own testimony).

Furthermore, the confines of "relevancy" are not so strict in cross-examination as in direct examination. *See Carroll v. State*, 916 S.W.2d 494, 497-98 (Tex. Crim. App. 1996). And, during the punishment phase of trial for a non-capital felony offense, determining what evidence should be admitted is a function of policy rather than a question of logical relevance. *See Sunbury v. State*, 88 S.W.3d 229, 233 (Tex. Crim. App. 1999); *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). When the standard of review is abuse of discretion, a reviewing court should not reverse a trial judge's decision whose ruling was within the zone of disagreement. *Weatherred*, 15 S.W.3d at 542.

The trial court's ruling was, at a minimum, within the zone of reasonable disagreement, and was not an abuse of discretion. Appellant's second issue is overruled.

### IV. PROSECUTORIAL MISCONDUCT

By his third issue, appellant asserts the State engaged in prosecutorial misconduct. Specifically, appellant contends that "the prosecutor's announcement that she would be 'happy to blurt out' why she felt the hypothetical was relevant was a cynical histrionic attempt to prejudice the jury."

In order to preserve error in cases of prosecutorial misconduct, the defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard

8

the matter improperly placed before the jury; and (3) move for a mistrial. *See Penry* v. *State*, 903 S.W.2d 715, 764 (Tex. Crim. App. 1995); *Montoya v. State*, 43 S.W.3d 568, 572 (Tex. App.–Waco 2001, no pet.). Regarding specificity, a party should "let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the court is in proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

Appellant did not object in the trial court on the grounds of prosecutorial misconduct, nor did he receive an adverse ruling on such an objection. Appellant did not seek an instruction that the jury disregard any false testimony that may have been admitted, nor did appellant seek a mistrial based on any alleged prosecutorial misconduct. Thus, appellant failed to preserve any error for appeal. *See* TEX. R. APP. P. 33.1; *Penry*, 903 S.W.2d at 764.

Appellant's third issue is overruled.

## V. CONCLUSION

Accordingly, we modify the trial court's judgment by deleting the cumulation order for counts three, four, and five, and affirm the judgment as modified.

ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and filed
this the 20th day of March, 2008.

9